Filed 2/11/21  P. v. Davis CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>CLYDE KEITH DAVIS,<br><br>  Defendant and Appellant. | B302994<br><br>(Los Angeles County<br>Super. Ct. No. BA072997) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Reversed and remanded with directions.

Alex Coolman, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

————————————————

Defendant Clyde Davis appeals the denial of his petition for resentencing under Penal Code section 1170.95, arguing that his court-appointed attorney was so ineffective as to constitute the denial of counsel entirely.[1]  The Attorney General responds that the trial court was justified in denying defendant's petition as a matter of law, without the appointment of counsel, so any inadequacies in counsel's performance were necessarily non-prejudicial.  We conclude defendant's petition could not have been denied as a matter of law; he should have been granted a hearing, with counsel, on the issue of whether he was entitled to relief under the statute.  As the trial court denied the petition without a hearing, we reverse.  Given the error in the trial court's procedure, it is unnecessary for us to determine whether counsel's deficient performance was additionally prejudicial.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1.    The Crime, Conviction and Appeal[2]

"Defendant and his codefendant Keith Gatson chased Joy Michelle Magdaleno, the decedent, with a gun, took her necklace,

---

[1]    Appellant's current appellate counsel did not represent defendant at the section 1170.95 hearing.  All undesignated statutory references are to the Penal Code.

[2]    Our discussion of the underlying facts is taken from the opinion affirming defendant's conviction, which was attached as an exhibit to the prosecution's opposition to defendant's 1170.95 petition.  (*People v. Davis* (Nov. 30, 1998, B113765) [nonpub. opn.].)  In its respondent's brief in the current appeal, the Attorney General includes a number of citations to the record from that appeal, noting, however, that it was "unable to locate the clerk's transcript and several volumes of the reporter's transcripts from the original appeal," but was copying the citations from the respondent's brief in that appeal.  The

struggled with her, and pinned her to the ground. Mr. Gatson then shot her in the head and shoulder and took her purse from her automobile before fleeing in defendant's car. During the decedent's subsequent hospitalization and prior to her death on December 19, 1992, she told her brother, mother, and father on various occasions that defendant and Mr. Gatson had kicked, beat, robbed, and shot her."[3] "At the time Mr. Gatson shot the decedent, defendant was approximately 18 inches away." An eyewitness observed both defendant and Gatson holding her down before she was shot. Defendant sold decedent's bracelet at a pawn shop five days later.

Defendant was convicted of first degree murder (§ 187) with the felony-murder special circumstance (§ 190.2, subd. (a)(17)(A)),

Attorney General filed a request for judicial notice of this court's record in the prior appeal. We denied the request without prejudice, explaining that our file "has been discarded," and indicating that the Attorney General may renew its request if specific documents are located and attached to the request. No renewed request was forthcoming. Thus, to the extent the Attorney General's brief includes citations to the record at defendant's trial, as opposed to the prior appellate opinion or any other document which was part of the record before the trial court in the section 1170.95 proceeding, it is unsupported.

[3] The prior opinion does not contain a separate statement of the facts, but instead discusses the facts only as relevant to each issue raised by defendant. For this reason, a complete understanding of the facts is elusive. It is only in the opinion's discussion of a hearsay issue that we learn that defendant was not unknown to the decedent, but was in fact " 'her mother's boyfriend.' "

3

and robbery (§ 211).[4]  On appeal, defendant challenged, among other things, the sufficiency of the evidence that he had aided and abetted a willful, deliberate, and premeditated murder.  A prior panel of this appellate division rejected this argument, both on the merits and because the "contention is irrelevant because there was substantial evidence of [defendant's] liability on a felony murder theory."  The appellate court also found there was sufficient evidence supporting the robbery-murder special circumstance.  The court stated, "We agree with the Attorney General that it is reasonable to presume that the jury found beyond a reasonable doubt that defendant, either with the intent to kill or with reckless indifference to human life and as a major participant in the crime, [aided and abetted] Mr. Gatson in the commission of the robbery which resulted in the death of the decedent."

## 2.    *Defendant's Section 1170.95 Petition*

Senate Bill No. 1437 (SB 1437) invalidated the natural and probable consequences doctrine as it relates to murder, and narrowed liability for felony murder.  (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*) review granted Mar. 18, 2020, S260493.)  As relevant to our purposes, a defendant may no longer be convicted of felony murder unless he was (1) the actual killer, (2) a direct aider and abettor, or (3) a major participant in the crime who acted with reckless indifference to human life, as defined in the felony murder special circumstance.  (§ 189, subd. (e).)

---

[4]    The jury also found true that a principal was armed with a firearm.  (§ 12022, subd. (a)(1).)

4

SB 1437 also enacted section 1170.95, providing a means by which a defendant convicted of murder under prior authority could seek resentencing under the new version of the law.

On March 17, 2019, defendant filed a form petition for resentencing under section 1170.95.[5]  He requested counsel.

The trial court appointed counsel to represent defendant "for the sole purpose of litigating the instant petition for resentencing."  The court set a briefing schedule, but did not set the matter for hearing.

### 3.  *The Prosecution's Opposition*

On July 24, 2019, the prosecution filed an opposition to the petition.  It argued, at length, that section 1170.95 was unconstitutional.  The prosecution also argued that defendant was not entitled to relief because the jury found the felony-murder special circumstance to be true.

### 4.  *The Three Replies Filed By Defendant's Appointed Counsel*

Defendant's counsel simultaneously filed three replies.  The first argued the constitutionality of section 1170.95.  The other two replies, which were designed to apply the law to the facts of defendant's case, failed in that effort.

---

[5]  Defendant did not check all necessary boxes in the petition which would entitle him to relief.  This omission alone would have justified the trial court in denying the petition on the basis that defendant did not assert the elements necessary for relief. (*People v. Nunez* (2020) 57 Cal.App.5th 78, [271 Cal.Rptr.3d 191, 198] review granted Jan. 13, 2021, S265918.)  Here, the trial court overlooked the omission.  The Attorney General does not suggest we should affirm based on any inadequacies in defendant's petition; we, like the trial court, choose to proceed.

One document was entitled defendant's "Reply."[6] The document was clearly an incomplete, unproofread draft.[7] The first argument in the Reply, which took up 10 pages, was based on the premise that defendant was convicted on the natural and probable consequences theory, although, in this particular case, defendant was not. The argument included a subsection entitled, "The Prosecution Argued And The Court Instructed On The Murder Theory Of Natural And Probable Consequences." Headings were left for "Statement of The Case" and "Statement of Facts" with no content beneath them. A later heading for "Excerpts From The Court Of Appeal Decision" promises a relevant quote from the appellate opinion. A blank section follows. There are sections devoted to the trial court's purported instruction on natural and probable consequences and the prosecutor's argument on the theory, directing the reader that the relevant instruction and transcript excerpts are attached as exhibits – but there are no exhibits, and these representations do not apply to this case. To the extent the Reply acknowledges that the prosecutor argued felony murder at trial, the promised transcript excerpts are not present, and there is no indication

---

[6] The Reply had a signature line for counsel, but was unsigned.

[7] It contained text directing "Kathy" to add a particular footnote. It also included an apparent drafter's note, suggesting that if the prosecution made a particular argument, then "THE TWO PARAGRAPHS BELOW MIGHT PROVE HELPFUL."

that the Reply's representations as to the nature of that argument properly describe this case.[8]

The Reply does, to a limited degree, address the People's argument that the true finding on the felony murder special circumstance renders defendant ineligible for relief. The Reply points out that defendant was convicted prior to the opinions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which clarified the law of aider and abettor liability for the felony murder special circumstance, more narrowly construing "major participant" and "reckless indifference" to satisfy constitutional minimums. The Reply discusses *Banks*, *Clark* and their progeny in the abstract for several pages. However, when it comes time to apply the law to the facts of this case, the Reply is again disconnected to this defendant. It refers instead to a defendant named "Winzer," whose crime was apparently part of "a spontaneous response by 15 to 20 people in the parking lot of a liquor store."

The third document filed on defendant's behalf was a "points and authorities re[garding] implied malice murder theory and Penal Code, section 1170.95." (Capitalization omitted.) This brief, also divorced from the facts in this action, appears to have been crafted in response to an argument made in another case,

---

[8] The Reply represents that the prosecutor gave little emphasis to felony murder as compared to natural and probable consequences and "did not say one word about special circumstance murder, i.e. what it means or how it applied to the evidence in this case etc. in his closing argument or in rebuttal." We observe that this Court's prior opinion does address felony murder and is silent on the natural and probable consequences theory of murder.

7

not in this one, suggesting the prosecution could raise, for the first time the theory of implied malice murder.

In short, while defendant's appointed counsel submitted a reasonable brief on the constitutionality of section 1170.95, and a viable legal discussion of *Banks* and *Clark*, counsel did not address the facts of this case at all, and apparently submitted briefing prepared in other cases, without making any attempt to adapt those briefs to support appellant's petition for resentencing.

Counsel was not given an opportunity to explain what had happened or to correct the defective briefs, because the trial court held no hearing on defendant's section 1170.95 petition.

### 5.  *The Trial Court's Ruling*

On November 6, 2019, the trial court issued its memorandum of decision denying defendant's petition.[9]

Preliminarily, the court found section 1170.95 constitutional.  The trial court then reviewed the record of conviction to determine whether defendant had established a prima facie showing that he was entitled to relief.  The court concluded that he had not, because defendant had been a major participant in the crime who had acted with reckless indifference. The court first relied on the prior appellate opinion finding sufficient evidence to support the felony murder special circumstance.  Second, the court conducted its own review of the evidence to conclude that, even in light of the intervening opinions in *Banks* and *Clark,* defendant was, in fact, a major participant acting with reckless indifference.  Based on a review

---

[9]     In a footnote in its ruling, the court identified many of the flaws it found in the three documents that defense counsel filed on defendant's behalf.

8

of this court's prior opinion and the court's review of the evidence, the court denied the petition.

Defendant filed a timely notice of appeal.

## *DISCUSSION*

Once a section 1170.95 petition is filed, there follows a multi-step process by which the court first determines whether the petition is facially complete, and, if so, whether the petitioner has made a prima facie showing that he falls within the provisions of statutory eligibility. (*People v. Torres* (2020) 46 Cal.App.5th 1168, 1177 (*Torres*) review granted June 24, 2020, S296179; *Verdugo*, *supra*, 44 Cal.App.5th at pp. 329-330.) The materials which the court can review at this stage include the prior appellate opinion (*People v. Lee* (2020) 49 Cal.App.5th 254, 263, review granted July 15, 2020, S262459; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1136, fn. 7, review granted Mar. 18, 2020, S260598) and the jury instructions given in the defendant's trial. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481.) If the court determines the petitioner is ineligible for relief as a matter of law, the petition is denied at this first stage; if not, the court proceeds to the next step. (*Torres,* at pp. 1177-1178.)

At the second stage, the court must appoint counsel for the defendant, if requested, and permit briefing on the issue of the defendant's entitlement to relief under the statute. (*Verdugo, supra,* 44 Cal.5th at p. 330.) The defendant has the burden of making a prima facie showing that he is entitled to relief, and the parties may rely on evidence outside the record. (§ 1170.95, subds. (c) & (d)(3).)

Here the trial court appointed counsel but held no hearing. On appeal, the Attorney General would have us interpret this as,

9

in effect, a denial at the initial, prima facie, stage – where the appointment of counsel is unnecessary and the court may deny the petition if the defendant is not eligible for relief as a matter of law.

Here, the trial court's analysis went beyond the permissible analysis at the prima facie stage. The trial court found that defendant was ineligible for relief because he was a major participant who acted with reckless indifference. The court rested its holding on two bases: the felony-murder special circumstance that was upheld on direct appeal; and its own analysis of the facts as establishing those elements.

As to the first, we have held that a felony murder special circumstance which predates *Banks* and *Clark* is an insufficient basis on which a trial court may deny a petition for relief at the first stage, which determines only if the defendant is ineligible for relief as a matter of law.[10] (*Torres, supra,* 46 Cal.App.5th at p. 1179.)

---

[10] A number of recent cases have disagreed with *Torres*, and held that a pre-*Banks/Clark* special circumstance is a sufficient basis on which to conclude a defendant is ineligible for relief under section 1170.95, suggesting that the proper procedure for the defendant to raise *Banks* and *Clark* is via a habeas petition. (E.g., *People v. Galvan* (2020) 52 Cal.App.5th 1134, review granted Oct. 14, 2020, S264284; see also *People v. Nunez, supra,* 57 Cal.App.5th 78; *People v. Jones* (2020) 56 Cal.App.5th 474, 478-479, review granted Jan. 27, 2021, S265854; *People v. Allison* (2020) 55 Cal.App.5th 449, 452-453.) On appeal, the Attorney General cites to these cases and argues against *Torres*. We have already addressed and disagreed with *Galvan*'s analysis, (*People v. York* (2020) 54 Cal.App.5th 250, 260-263, review granted Nov. 18, 2020), and adhere to the rule expressed in *Torres*.

As to the second ground for the trial court's denial, we have held that the determination of whether a defendant was a major participant acting with reckless indifference within the meaning of *Banks* and *Clark* is a factual determination which cannot be conducted at this stage as a matter of law by simply reviewing the existing record. (*People v. Smith* (2020) 49 Cal.App.5th 85, 95, review granted July 22, 2020, S262835; contra *People v. Law* (2020) 48 Cal.App.5th 811, 816, 822, review granted July 8, 2020, S262490.) This is so because the factual record "is not the only consideration the trial court must take into account for purposes of section 1170.95. Where the record of conviction does not preclude a petitioner from making a prima facie showing that he falls within the statute's provisions as a matter of law, the petitioner is not confined to presenting evidence contained in the record of conviction in seeking relief." (*Smith, supra,* 49 Cal.App.5th at p. 95.)

Thus, the trial court's factual determination that defendant was a major participant acting with reckless indifference was premature. Defendant was entitled to the appointment of counsel, and a hearing at which his counsel could have presented evidence outside the existing record. Although the trial court appointed counsel, it did not hold a hearing. For this reason, and apart from the obvious failings in the submissions of appointed counsel, we must reverse.[11]

---

[11] On appeal, defendant does not argue that his appointed counsel rendered prejudicial ineffective assistance; he argues that his appointed counsel was so ineffectual as to constitute a deprivation of counsel, such that he is entitled to automatic reversal regardless of prejudice. (*United States v. Cronic* (1984) 466 U.S. 648, 659.) Whether prejudice or structural error is the proper standard involves considerations of the Sixth Amendment

11

While defendant may not ultimately be entitled to relief and his counsel did not identify any new evidence he would present at an order to show cause hearing, the record as it currently stands – in which defendant's felony-murder special circumstance finding was not necessarily sufficient under the current law – establishes a prima facie showing of entitlement to relief that requires issuance of, and hearing on, an order to show cause (§ 1170.95, subds. (c) & (d)(1)).

### *DISPOSITION*

The order denying defendant's petition for resentencing under section 1170.95 is reversed. The matter is remanded for the court to issue an order to show cause and hold a hearing on whether defendant's murder conviction should be vacated.

RUBIN, P. J.

WE CONCUR:

BAKER, J.

KIM, J.

---

right to counsel and the statutory right to counsel created by section 1170.95. We do not need to resolve the issue. As we have stated, we do not rely on ineffective assistance of counsel or a de facto absence of counsel in reversing the trial court's order.